WHITLOW v. PATTERSON.

4-4847

Opinion delivered December 13, 1937.

174

*Vol T. Lindsey,* for appellants.

*Jeff Duty, J. T. McGill* and *Daily & Woods,* for appellee.

MEHAFFY, J. On November 17, 1923, R. H. Whitlow made a will, appointing his wife, Eva L. Whitlow, and the Farmers Trust Company joint executors, and on December 12, 1929, he made a codicil to his will. R. H. Whitlow died January 8, 1932. The Farmers Trust Company ceased to do business and surrendered its charter on July ....., 1931. After Whitlow's death, the Farmers Trust Company, having ceased to do business, could not serve as one of the executors, and Mrs. Eva L. Whitlow waived her right to serve as executor, and she and I. C. Patterson, the appellee, were appointed administrators with the will annexed. After the Farmers Trust Company surrendered its charter, the First Mortgage & Investment Company was organized and I. C. Patterson was president of the investment company, and all of the money and securities belonging to the estate of R. H. Whitlow were deposited in and kept by the First Mortgage & Investment Company.

Prior to Whitlow's death the Farmers Trust Company was indebted to the First National Bank of St. Louis, Missouri, in the sum of $18,000. It borrowed from banks in Mississippi $18,000 and R. H. Whitlow indorsed the notes. To secure Whitlow, the following agreement was entered into:

"This agreement made between Farmers Trust Company, a party of the first part, and R. H. Whitlow, party of the second part, that in consideration of the fact that R. H. Whitlow is indorser on certain promissory notes, one to the Merchants & Farmers Bank of Columbus for $6,000; one to the First Columbus National Bank for $6,000 and one to the National Bank of Commerce for $6,000, all of Columbus, Mississippi, due and payable to the above banks within ninety (90) days from date of

said notes—same being dated January 10, 1931. These notes are given for the purpose of taking up other promissory notes for $18,000 due to the First National Bank of St. Louis, Missouri, who hold collateral of real estate mortgages in the amount of $36,500 guaranteeing the payment of same.

"Now therefore the said Farmers Trust Company, party of the first part, agrees with R. H. Whitlow, party of the second part, that the payment of the indebtedness due the First National Bank of St. Louis shall be made with the $18,000 secured by his indorsement to the banks of Columbus, Mississippi, and that the Farmers Trust Company will release to R. H. Whitlow the entire amount of the $36,500 as a guarantee for the full payment of the several notes due to the banks of Columbus, Mississippi, indorsed by the said R. H. Whitlow. The said R. H. Whitlow agrees at any time the Farmers Trust Company disposes of any of the notes that the amount secured from sale thereof will be applied on the amount of indebtedness at Columbus, Mississippi, and for each dollar paid—two dollars in collateral returned to the Trust Company.

"All things contained herein are ratified by the Farmers Trust Company, party of the first part, and R. H. Whitlow, party of the second part.

"FARMERS TRUST CO.

"By I. C. Patterson, Pres.

"Party of the First Part.

"R. H. Whitlow,

"Party of the Second Part."

On April 10, 1928, Mr. Whitlow made a trust agreement with the Farmers Trust Company. In that trust agreement, Whitlow executed and delivered to the Farmers Trust Company, as trustee, certain lands for his wife, Mrs. Eva L. Whitlow, and certain other property for the use and benefit of Frances Whitlow, and also other property for the use and benefit of Horace Whitlow. In said agreement Mr. Whitlow also set over and assigned for the use and benefit of Eva L. Whitlow certain personal property amounting to $22,130. Among these

items of personal property was $12,000 of bonds of the Farmers Trust Company. He also assigned and set over for the use and benefit of Frances Whitlow certain personal property amounting to $21,019. While the Farmers Trust Company, under said agreement, had a right to hold, control and manage said property turned over to it, R. H. Whitlow reserved the right to pass on the question of the sale of the property himself, and provided that it should not be sold without his approval. The trust company had the right to reinvest the proceeds in good securities for the use and benefit of the beneficiaries, but it was also provided that the interest derived from said property, after expenses were paid, should be paid over to the beneficiaries or their guardian. The trust agreement provided that the real and personal property designated as belonging to Eva L. Whitlow should be delivered to her at once upon the death of R. H. Whitlow.

The Farmers Trust Company and Eva L. Whitlow were nominated in the will as executors. However, before Mr. Whitlow's death the Farmers Trust Company had surrendered its charter and, therefore, could not act as one of the executors. Mrs. Whitlow waived her right to serve as executor and she and I. C. Patterson were appointed administrators with the will annexed. The surrender of the charter of the Farmers Trust Company occurred several months before the death of Mr. Whitlow, and he did not designate any other person as executor. After the surrender of the charter of the trust company, the First Mortgage & Investment Company was formed and all the property belonging to the trust company, and belonging to Whitlow, his wife and children, was turned over to the First Mortgage & Investment Company.

The administrators with the will annexed undertook to manage and administer the estate under the will without any orders from the probate court. They did not file any inventory, but on January 19, 1933, they filed an Account Current. The administrators stated in their report and account current that they now had in

their hands and possession the sum of $3,257.12 belonging to said estate, and that all disbursements and receipts received from said estate since January 8, 1933, are fully shown and itemized as per statement attached, marked Exhibit "A" and made a part of the report.

It appears that the administrators did not comply with any of the provisions of the statute, but assumed that they had the right to act under the will without regard to the statute and without any order of the probate court.

Section 51 of Pope's Digest provides that every executor and administrator shall, immediately after receiving letters, collect and take into possession all the property of the testator and make a true and perfect inventory thereof. Section 52 provides for an affidavit to be annexed to the inventory, and § 53 provides that such inventory and affidavit shall be filed in the office of the clerk within 60 days after the letters are granted.

Section 13 of Pope's Digest provides for letters of administration with the will annexed. Section 237 of Pope's Digest reads as follows: "The provisions of this act shall extend to the execution of last wills and testaments, and to letters of administration with the will annexed; and the same may be removed in like manner as in cases of administration on the estates of intestates."

"When an administrator *cum testamento annexo* has been appointed, he is liable to the same provisions of law as other administrators, except that he distributes the estate according to the will of the testator." Croswell's Executors and Administrators, The Hornbook Series, p. 129.

The Kentucky court said: "An administrator with the will annexed shall possess and exercise all power and authority and shall have the same rights and interest and be responsible in like manner as the executors herein named or any of them." After quoting the above statute, the court said: "But it has been frequently held that this statutory provision does not, in all cases, confer upon an administrator with the will

annexed all the power and authority confided by a testator to his executor, and that whether an administrator with the will annexed can exercise all the power confided to an executor depends upon the nature of the power confided to the executor and the manner of its execution as described by the testator in delegating the power." *Schlickman* v. *Dusing,* 180 Ky. 506, 203 S. W. 295.

There are many cases which hold that an administrator with the will annexed has the same powers as ordinary administrators, except that the distribution of the property must be according to the terms of the will. See *Snow* v. *Bray,* 198 Ala. 398, 73 So. 542; *Briscoe's Devisees* v. *Wickliffe,* 6 Dana (Ky.) 157; *Hodgin* v. *Toler,* 70 Ia. 21, 30 N. W. 1, 59 Am. Rep. 435; *Lockwood* v. *Stradley,* 1 Del. Chy. 298, 12 Am. Dec. 97.

The administrators filed their account current, but Mrs. Whitlow filed a petition in the probate court requesting that her name be taken from the report, and she and the heirs then filed exceptions to the account current. There was a hearing before the probate court and most of the exceptions were upheld.

Mr. Patterson appealed to the circuit court and that court reversed the judgment of the probate court. The circuit court held first that the $36,500 of collateral notes, which originally secured the liability of Whitlow on his indorsement of the Mississippi bank notes had been reduced by agreement between Whitlow and the First Mortgage & Investment Company to $21,000. The written agreement shows that Whitlow was given this collateral security, $36,500, to protect him on his indorsement of the $18,000 notes. The mortgage company owed a bank in St. Louis $18,000, and it induced Whitlow to indorse its notes to the Mississippi banks, giving him this collateral as security.

Patterson testifies that Whitlow said he would rather have $18,000 in securities than to have the money. After Whitlow's death, Mrs. Whitlow and Mr. Patterson took the money out of the estate and paid the Mississippi banks $18,000, and then Mr. Patterson, for the mortgage company, reduced the collateral to

$21,000. In the first place, they had no right to take the money belonging to the estate and pay the Mississippi banks, and having done so without authority, the administrator is liable for the amount. If the administrators have in their possession the collateral, the administrators would be liable for the difference between the $18,000 (it was in fact $18,039) and the value of the collateral held. There is some evidence about the value of the collateral, but not sufficient for us to determine what it is, and that will have to be determined by the circuit court.

The circuit court erred in finding that the administrators properly credited themselves with the amount of said collateral notes. They should be charged with $18,039, and credited with the amount received for the securities.

The circuit court also found that the administrators properly credited themselves with $7,400 paid on the Frances Whitlow claim. In this, the court also erred. The facts about the $7,400 claim are as follows: the estate owed Frances Whitlow $7,400 and when the claim was allowed, the money was in the mortgage company and as soon as Frances Whitlow was notified that her money was there, she wrote Mr. Patterson to invest it in government bonds, and he wrote her that he had already invested it to her advantage. What he had actually done was to take the $7,400 and $2,600 additional that Frances Whitlow had in the mortgage company, and purchase from the mortgage company, which was really from himself, the Ford mortgage for $10,000. The evidence shows that the Ford mortgage was probably worth $2,600. The undisputed facts show that this money was taken out of the estate funds and appropriated by the mortgage company, and the mortgage company transferred the Ford mortgage to Frances Whitlow.

Frances Whitlow, when on the witness stand, was asked if she did not accept the mortgage. She said she found that her money was gone and that was her only recourse. If Mr. Patterson believed that he had a right to do this, he was mistaken. A trustee has no right to

take the trust funds in payment for property belonging to him. Of course, this was the mortgage company's mortgage, and not Patterson's individually, but Patterson was president of the company, and he himself testified that he did not consult any one else about the transaction. He simply took $10,000 of the estate's money and appropriated it to the mortgage company.

The next item is the $2,030 of the Brandon note. The circuit court held that the administrators had a right to credit themselves with the Brandon note. The facts are that the Brandon note and mortgage were the property of the mortgage company, and this note was transferred to the estate and $2,030 of the estate funds transferred to the mortgage company. The circuit court held that the administrators properly credited themselves with this amount. This was error. The court should have held that the administrators should be charged with the $2,030 and credit themselves with the value of the note and mortgage.

The same thing is true of the Hayes note. It was error to give them credit for the amount of $3,105. They should have been charged with this amount and credited with the value of the note and mortgage.

The court correctly held that the administrators were not entitled to take credit for $3,075 of debenture bonds. The appellee argues that the court erred in this, but the facts are that Mrs. Whitlow owned the debenture bonds, and, in a suit in chancery court, recovered them and was given an off-set for their value against an indebtedness which she owed the mortgage company, and the administrators were not entitled to take credit for this amount.

The same thing is true with reference to the $1,881.69 evidenced by the Talbert note. Frances Whitlow recovered this note in the chancery court, and the court held that the purchase money paid to her by the administrators was not restored to the estate, and that the administrators were not entitled to take credit for said amount. In this the circuit court was correct.

The circuit court correctly held that the administrators were not entitled to take credit for the Fielding note of $2,342.26 because Horace Whitlow had recovered this note in the chancery court, and the money was not restored to the estate, and of course the administrators were not entitled to take credit for it.

The same is true with reference to the Mary D. Ball note for $1,587.50. The court correctly held that this money had not been restored to the estate, and the administrators were not entitled to take credit for said amount.

The ninth exception, with reference to a balance of $3,251.81, should have been sustained.

The court held that I. C. Patterson was not guilty of neglect, waste or mismanagement, and for that reason the probate court erred in revoking his letters, and in refusing to allow Patterson a commission for his services. The circuit court found Eva L. Whitlow, with I. C. Patterson, participated in the purchases of all the securities and participated in all the other transactions. Mrs. Whitlow knew nothing about business, and she testified that she did not know anything about what was being done, and if she had known all about it and participated in it, this could not relieve Mr. Patterson. Each of them would be liable for any misappropriation of the estate's funds.

The circuit court found that the administrators, at the time of filing their account, had handled funds of the estate in the sum of $64,518.09, and that they were entitled to receive for their services, $1,935.54. It is true, they had handled this much money, but a great deal of it had been handled by Patterson's selling notes and mortgages to the estate, and taking the money for the mortgage company.

It seems clear that while he talked to Mrs. Whitlow and told her about some of the transactions, she did not know anything about it. She testified among other things: "I never had any business experience, nothing only pots and pans and cooking meals and taking care of my family."

182

Appellee argues that there is no merit in the contention that the account current is not in the form required by law. It is true that the form would not have to be in the words of the statute, but it would have to show the amount which came into the administrators' hands. They probably accounted for all that came into their hands, but the record does not show this. It is said in appellee's argument that the administrators purport to charge themselves with all of the estate coming into their hands, and they may have done this, but the probate court should have required an inventory showing all the money that came into their hands.

Appellee correctly states that there is no question on burden of proof. As to who goes forward with the evidence, is often largely in the discretion of the trial court. In this case, Mr. Patterson himself testifies to having done the things that the law does not permit, and there is practically no dispute about these things.

It is next contended by the appellee that the will authorized the investments. The will did authorize the executors to make investments, but this would not authorize the administrators with the will annexed to reinvest, but if it did, neither Mrs. Whitlow nor Mr. Patterson, either as executors or as administrators with the will annexed, could invest the estate's funds in their property. The executors under the will, although given power to reinvest could not reinvest in their own property. In other words, the administrators represented the estate and Mr. Patterson represented the Mortgage Investment Company. It was their duty as administrators or executors to administer the estate in good faith and to the best interest of the estate. It was Mr. Patterson's duty to the Mortgage Investment Company to faithfully represent it and, in taking the funds of the estate and purchasing property of the Mortgage Investment Company, Mr. Patterson was representing both parties, and this he could not lawfully do. "No man can serve two masters; for either he will hate the one, and love the other; or else he will hold to the one and despise the other."

An agent authorized by his principal to purchase property cannot purchase it from himself. Mr. Patterson may have been guilty of no intentional misconduct or bad faith, but no matter what his intentions were, the taking of the estate's money and investing it in the mortgage company's property, especially when Mr. Patterson did all this personally, according to his own testimony, without consulting anyone else connected with the mortgage company, he did what the law forbids. It is true, Mrs. Whitlow acted jointly with Patterson, and while she probably did not understand the meaning of the transaction, she would be liable to the estate for any transaction to which she consented. The judgment of the chancery court in a case where Mr. Patterson was a party is binding on him. The appellee cites many authorities, but there was a judgment of the chancery court in a case where he was a party, determining the rights or ownership in the bonds and notes and this decree is binding on all parties to the suit. In order to determine the value of the securities purchased with the funds of the estate, it will be necessary either to sell the securities or to take additional testimony as to their value. When the value of the securities is ascertained, the administrator should be charged with the money with which the securities were purchased and credited with the value of the securities. That is, he should be charged with the difference between the money taken from the estate and the value of the securities purchased. It follows from what we have said, that the judgment on cross-appeal must be affirmed and the judgment on appeal is reversed and the cause remanded to the circuit court with directions to enter a judgment as herein indicated, and it is so ordered.

Smith, J., concurs.