**PACHTER, GOLD & SCHAFFER, a Professional Corporation, Plaintiff,**

v.

**John M. YANTIS, Defendant,**

**Col. Roy Henson, Auctioneer, Garnishee.**

Civ. No. FS–89–69.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Aug. 10, 1990.

John R. Beasley, Fort Smith, Ark., for plaintiff.

Joel D. Johnson, Fort Smith, Ark., for defendant.

W. Gary Kennon, Bentonville, Ark., for garnishee.

## MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

In 1956, Eva Vick Yantis created a so-called "spendthrift trust" for her children. The trust provided that no principal or income could be attached by creditors prior to its receipt by beneficiaries. (Def. Exh. 1, at 6). *See Bowlin v. Citizens Bank & Trust Co.*, 131 Ark. 97, 101–02, 198 S.W. 288, 289 (1917) (holding that spendthrift trusts are valid under Arkansas law). The first codicil to Mrs. Yantis's will created a separate spendthrift trust ("the Trust"), for her son John ("defendant"). This trust appointed defendant and Merchants National Bank as cotrustees, and provided that: (1) defendant would receive the trust income during his life, with the remainder to pass to his appointees; and (2) that no appointment made by defendant could benefit defendant, his estate, his creditors, or the creditors of his estate. In 1988, defendant was appointed sole trustee of the Trust.

In 1988, plaintiff, one of defendant's creditors, recovered a judgment against defendant for slightly over $32,000.00, plus interest and attorneys' fees. In 1990, Col. Roy Henson auctioned off numerous antiques owned by either defendant or the Trust and plaintiff then filed a writ of garnishment in order to attach the auction proceeds. On June 14, 1990, defendant filed the instant motion to discharge garnishment, on the basis that all the property auctioned off was owned by the Trust.

Plaintiff filed a response to the motion on June 21, 1990.

On July 11, 1990, this court held a hearing on the motion. The court held that a dome-in-frame (Def. Exh. 6) and a cut glass pitcher (Def. Exh. 9), worth a total of $13,585.00, were owned by defendant, and that the proceeds from their sales (less commission) could therefore be garnished. The court reserved judgment, however, on two questions: (1) whether a floor lamp worth $13,000.00 (Def. Exh. 4) belonged to defendant or to the Trust; (2) whether the proceeds from the sale of other items could be garnished. The court has received briefs from the parties, and will address each of these questions in turn.

### I.

The floor lamp at issue was originally acquired by defendant and sent to his agent, a Mr. Johnson. Johnson then wrongfully converted the lamp by pledging it without defendant's permission. The pledgee of the lamp, who took without notice of the agent's lack of title, then sold it to the Trust, which sold it at the auction. Thus, the court must decide whether defendant retained title to the lamp after it was wrongfully pledged.

Plaintiff argues that defendant has title to the lamp even against bona fide pledgees, because a pledge by one with no interest to the property "is void against the real owner, and the owner may follow and reclaim the property no matter in whose possession it may be found." 72 C.J.S. Pledges § 7 at 8–9 (1987). Similarly, "any agency property wrongfully converted by an agent may be recovered by the principal from a purchaser, even a good faith purchaser." *In re Crouthamel Potato Chip Co., Inc.*, 6 B.R. 501, 509 (Bkrtcy.E.D.Pa. 1980) ("*Crouthamel*"). On the other hand, pledges are "security interests" under the Uniform Commercial Code, A.C.A. § 4–9–102(2) (1987), which contains some protection for bona fide purchasers. *See, e.g.*, A.C.A. § 4–9–309 (1987) (bona fide purchasers may take priority over earlier security interest). Thus, the question presented is whether, if an agent wrongful-

ly creates a security interest in the principal's property, the secured creditor has title as a bona fide purchaser.

The *Crouthamel* case is on point. In *Crouthamel*, Jenson–McLean entered into a business relationship with Crouthamel for the purpose of selling canned potato chips, and the parties cooperated in the purchase of canning equipment. After Crouthamel declared bankruptcy, Jenson–McLean, Crouthamel, and Westinghouse (one of Crouthamel's secured creditors) all claimed title to the equipment. *Crouthamel*, 6 B.R. at 503–05. The court initially held that Crouthamel had merely acted as Jenson–McLean's agent, and therefore did not have title to the equipment. *Id.* at 508. The court went on to reject Westinghouse's claim that it received a security interest in the canning equipment from Crouthamel, because "a secured creditor cannot obtain a security interest in property held by an agent for another ... [and therefore] any agency property wrongfully converted by an agent may be recovered by the principal from a purchaser, even a good faith purchaser." *Id.* at 509. In support of this view, the court relied on two provisions of the Uniform Commercial Code ("U.C.C."). Section 1–103, as codified in Arkansas, provides that "[u]nless displaced by the particular provisions of this subtitle, the principles of law and equity, including the law merchant and the law relative to ... principal and agent ... shall supplement its provisions." A.C.A. § 4–1–103 (1987). Section 9–204, as codified in Arkansas, provides that "a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless ... the debtor has rights in the collateral." A.C.A. § 4–9–203(1) and (1)(c) (1987).[1] *See also* S. Nickles, *A Localized Treatise on Secured Transactions—Part 11: Creating Security Interests,* 34 Ark.L. Rev. 559, 612–13 (1981) (debtor must have some ownership interest in collateral), *citing Lonoke Prod. Credit Assn. v. Bohannon,* 238 Ark. 206, 208, 379 S.W.2d 17, 19 (1964) (dictum) (addressing priorities be-

tween security interests, and noting that security interest attaches when "the debtor has acquired some ownership in the collateral which he can encumber"); *Crouthamel,* 6 B.R. at 508 (citing cases from other jurisdictions).

In sum, *Crouthamel* stands for the proposition that under the U.C.C., an agent may not create a valid security interest by wrongfully converting the principal's property, even if the agent's creditors acted in good faith. The court finds that the *Crouthamel* court's reasoning is highly persuasive, and accordingly finds that the lamp belonged to defendant and that the $13,000.00 received from its sale (less commission) may be garnished.

## II.

At the July 11 hearing, the court found that all auctioned antiques not discussed above belonged to the Trust. Plaintiff suggests, however, that even that property may be garnished, because (1) spendthrift trust assets may be attached as soon as the beneficiary has a right to receive income therefrom, even if he has not actually done so; (2) spendthrift trust assets may be garnished where the debtor is both the sole trustee and the sole income beneficiary; and (3) that the court erred in holding that the antiques were in fact Trust property. Each of these arguments will be addressed in turn.

## A.

■ The first codicil to the trust instrument provides that the trustee must "pay the income to said trust to my son, John M. Yantis, for and during his lifetime." (Def. Exh. 2 at 2). Thus, defendant has the right to receive trust income as soon as it is accumulated. It could be argued that because defendant already has the right to receive auction proceeds, such proceeds may be garnished even if defendant has not exercised this right. The original trust instrument states, however, that trust in-

---

**1.** After the *Crouthamel* case was decided, this requirement was transferred from Section 9– 204 of the Code to Section 9–203.

come may not be attached "prior to its actual receipt by the beneficiary." (Def. Exh. 1 at 6). Even if the trust instrument had been ambiguous, the court would adopt the Restatement's view that a spendthrift trust "protects income which has been received by the trustee but has not been paid by him to the beneficiary." Restatement (Trusts) Second § 152 Comment h (1959). An illustration explains that if a spendthrift trust allows B (the trustee) to pay C (the beneficiary) trust income, C's creditors "cannot reach the income collected by B which is still in B's hands, whether the time for the payment of it to C has not yet arrived or has passed without such payment being made." *Id.* at Illustration 9. *See also In re Pettit,* 61 B.R. 341, 346 (Bkrtcy.W.D.Wash.1986) (majority of states approve of comment h, although Washington state does not); 6 *American Law of Property* § 26.129 at 582–83 (A. Casner ed. 1952) (noting that "great weight of authority" supports Restatement view).

### B.

█ Plaintiff next argues that defendant is "the sole trustee and the sole income beneficiary ... [and that] [t]his results in a merger of the legal and equitable title of the life interest in the trust so that none of the income is protected by the spendthrift clause, even if it is not formally distributed." (Plaintiff's Brief at 4–5). Defendant agrees that he "cannot be both sole beneficiary and sole trustee of the trust." (Defendant's Post Hearing Brief, at 8). Indeed, it is a universally recognized rule that merger will occur when equitable and legal titles are held by the same person. But it is axiomatic that the interests must be of the same quantity and here they are not. As trustee, defendant holds the legal title in fee simple absolute, but as beneficiary he has only an equitable life estate. He has, in addition, a power to appoint a remainderman, either equitable or legal, and there is an express gift over in default of appointment. There is, therefore, no merger. *See Restatement (Second) of Trusts* § 99(2) (1959) ("[o]ne of several beneficiaries of a trust can be the sole trustee of the trust.") Comment b to that section

opines that in circumstances like ours "[t]here is no partial merger of the legal interest and the equitable interest. The beneficiary who is also trustee does not hold any part of the property free of trust." *See also id.* § 152, comment m. *Cf. Vaughan v. Shirey,* 212 Ark. 935, 208 S.W.2d 441 (1948).

By contrast, the case of *Hartsfield v. Lescher,* 721 F.Supp. 1052 (E.D.Ark.1989), cited by plaintiff, is easily distinguishable. In *Hartsfield,* the court held that the beneficiaries of a spendthrift trust (who were not its trustees) could not extend the term of a spendthrift provision, *id.* at 1057–58, an issue not presented by this case. Thus, *Hartsfield* is not relevant to the question of when a spendthrift trust is invalid because the trustee has been designated as the sole beneficiary of the trust. Accordingly, the court holds that defendant was not the sole beneficiary of the Trust.

### C.

Finally, plaintiff claims that although the antiques sold at the auction were designated by defendant, and held by the court, to be Trust property, they are not in fact Trust property. Plaintiff has raised several arguments in support of this claim.

█ First, plaintiff suggests that defendant's listing of trust assets improperly includes numerous gifts by defendant to the Eva Vick Yantis Trust, because in 1988 the trust included roughly $1 million of Mid–America Industries stock (Def. Exh. 12), which was not part of the original trust corpus. Assuming for the sake of argument that defendant in fact made an illegitimate gift to the trust, the court fails to see how the proper ownership of the Mid–America Industries stock is relevant to the proper ownership of the antiques. Indeed, the trust's 1988 tax return reveals that it had $42,000.00 in taxable income unrelated to the Mid–America stock, an amount far greater than the value of the antiques at issue. It follows that these antiques were trust property.

█ Second, plaintiff suggests that because defendant, while acting on behalf of

the Trust, bought property from an antique business he owned, defendant's payment for the antiques is "properly classified as personal loans to Yantis for use for the acquisition of inventory for his business, and the obligation to repay the trust was his personal obligation." (Plaintiff's Brief at 6). In fact, all defendant did was buy antiques on behalf of the Trust from a business he owned. Such conduct may well be self-dealing which could be attacked by a beneficiary, but hardly constitutes a loan.[2] *See* 90 C.J.S. Trusts § 248 at 257–60 (1955) (trustee may not purchase his individual property for the trust, and purchase voidable by trust beneficiary); *Whitlow v. Patterson,* 195 Ark. 173, 179–80, 112 S.W.2d 35, 38 (1937). Furthermore, defendant did not, as plaintiff suggests, acquire inventory for his business, but instead acquired inventory (*i.e.,* antiques) for the trust.

Third, plaintiff argues that the trust instrument simply does not allow risky investments such as the purchase of antiques. Although trustees usually should not invest in businesses, plaintiff has misinterpreted the trust instrument. Eva Vick Yantis's will allows trustees "[t]o invest and reinvest the trust estate from time to time in any property, real or personal ... even though such investments (by reason of its character, amount, proportion to the total trust estate, or otherwise) would not be considered appropriate for a fiduciary apart from this provision." (Def. Exh. 1 at 4). It is impossible to imagine broader language.

The court therefore finds that roughly $8,000.00 of defendant's antiques, and the proceeds therefrom were trust property rather than defendant's property, and may not be garnished by plaintiff.

### III.

For the reasons stated above, the court will:

1. Deny the motion to discharge garnishment as to the proceeds from the sale of defendant's dome-in-frame, cut glass pitcher, and floor lamp, for a total of $26,585.00 less commission; and

2. Grant the motion as to the proceeds from all other property sold in the 1990 auction.

---

**2.** It could be argued, of course, that the Trust's spendthrift clause is invalidated by defendant's self-dealing. Piercing the trust, however, would punish other beneficiaries twice: once by defendant's self-dealing, and again through plaintiff's garnishment of the proceeds therefrom. The purpose of the prohibition on self-dealing is to protect beneficiaries rather than to punish them. Accordingly, the court declines to garnish trust assets because of defendant's self-dealing.