REAGAN *v.* HODGES.

Opinion delivered July 12, 1902.

JUDGMENT—CONCLUSIVENESS.—On a motion for a writ of possession to enforce a foreclosure sale of mortgage property, it. is not competent for defendants to prove title to the land acquired by adverse possession before the decree of foreclosure, as the decree divested defendants of every right they had to the land at that time.

Appeals from Washington Circuit Court and Washington Circuit Court in Chancery.

JAMES M. PITTMAN, Judge.

Reversed.

*B. R. Davidson,* for appellant.

The court had power to issue an *alias* writ of possession, and it was a denial of justice to refuse to do so. 50 Ark. 551; 21 Ark. 130. A court, having jurisdiction for one purpose, has it for all. 46 Ark. 25; 14 Ark. 50; 33 Ark. 454; 37 Ark. 286. The decree is conclusive as to all rights which could have been asserted. 19 Ark. 420; 41 Ark. 75; 43 Ark. 230; 44 Ark. 165. Appellees were estopped by their own acts and those of their counsel. 45 Ark. 37; 35 Ark. 365; 33 Ark. 465; 18 Ark. 142; 64 Ark. 253; 63 Ark. 268; 26 N. J. Eq. 500; 62 Wis. 255; 156 U. S. 689; 96 U. S. 258; 13 How. 307. They could not hold adversely until they had surrendered possession. 43 Ark. 29; 28 Ark. 153; 27 Ark. 50; 15 Ark. 102; 13 Ark. 220. The decree bound appellees as parties and as privies. 38 Ark. 182. H. F. Reagan had no right of possession. 68 Ark. 449-60. The evidence as to joint occupancy should have been excluded. 61 Ark. 341; 20 Ark. 597; 22 Ark. 82; 62 Ark. 26; 30 Ark. 8. There could be no adverse holding by the heirs during the life of the ancestor. 42 Ark. 357; 35 Ark. 84; 22 Ark. 567; 20 Ark. 600; 60 Ark. 1; 68 Ark. 449-60; 65 Ark. 90. A remainderman may take notice of disseisin, but he may wait until his right of entry accrues. 65 Ark. 68; 60 Ark. 74; 53 Ark. 403. There was no adverse holding by appellees. 58 Ark. 510; 56 Ark. 485; 43 Ark. 504; 43 Ark. 469; 34 Ark. 312; 1 Jones, Mortg. § 672; 3 Atl. 709; 33 Ark. 17. To create a statutory bar, the possession must be actual, open, continuous and unbroken. 68 Ark. 551; 65 Ark. 422; 49 Ark. 266; 48 Ark. 277; 27 Ark. 77; 22 Ark. 84.

*J. V. Walker, Thomas B. Latham, George A. Grace,* for appellees.

The motion for writ of possession was finally denied. 2 Black, Judg. 692; 26 Am. St. Rep. 948; 96 Am. Dec. 778; 52 Am. St. Rep. 597; 24 Ark. 371. There can be no estoppel by misrepresentation, unless it be believed and relied upon. 53 Ark. 196; 36 Ark. 96; 7 Am. & Eng. Enc. Law, 2, 17; 50 Ark. 141. The demurrer in the ejectment case should not have been sustained. 24 Ark. 371; 23 Ark. 169. Adverse possession was shown fully; the verdict of the jury sustaining it. 65 Ark. 70; 68 Ark. 449; 2 Jones, Mortg. § 1211.

BATTLE, J. On the 27th day of February, 1859, James C. Hodges and W. B. Taylor and George E. White executed their

writing obligatory to W. D. Reagan for the sum of $1,000, money loaned to James C. Hodges; the said W. B. Taylor and George E. White being sureties thereon. At the same time James C. Hodges, being the owner of block 20 in the city of Fayetteville, in this state, in consideration of the fact Taylor had become such surety on condition that he, Hodges, would secure him against all losses by mortgage, executed a deed, and thereby conveyed to Taylor said block 20 for the purpose of indemnifying and holding him harmless "against all claims, accounts, charges, suits, judgments and executions and demands whatsoever that might be brought or prosecuted against him on said writing obligatory or by reason of his becoming such security;" and in due form of law acknowledged the execution of the same. Alley Hodges, the wife of Hodges, also joined in the execution and acknowledgment of the deed, but not in conformity with the statute in such cases made and provided. Taylor caused the mortgage to be recorded on the 4th day of March, 1859, in the proper office and in the manner prescribed by law. Thereafter, in the year 1859, Hodges died, leaving Alley Hodges, his widow, and Robert Hodges, his only heir, him surviving; and thereafter Robert Hodges died, leaving Sarah Hodges, his widow, and James C. Hodges, Jr., Robert Hodges, William T. Hodges, and Maggie Poore, his only children and heirs, surviving. After this W. D. Reagan sued Taylor and White on the writing obligatory executed for the $1,000, recovered judgment against them for $2,784 and 10 per cent. per annum interest thereon from that date until paid. On the 2d day of June, 1888, in an action instituted by Taylor against the said Alley Hodges, Sarah Hodges, Maggie Poore, and her husband, James Poore, James C. Hodges, Jr., Robert Hodges and William T. Hodges, in the Washington circuit court, to which W. D. Reagan was made a plaintiff, the court found that said mortgage was invalid as to the said Alley Hodges on account of the defects in the execution and acknowledgment thereof by her, that there was still due and unpaid on said judgment the sum of $3,709, that Reagan was entitled to be subrogated to the rights of Taylor, and that the amount due and unpaid was a lien on said block 20; and ordered that the same be sold to satisfy said lien, subject to the dower of Alley Hodges, and appointed a commissioner to make the sale and directed him to pay the $3,709 and interest thereon, out of the proceeds thereof, to Reagan. The commissioner, pursuant to the decree, sold the

block, on the 25th of February, 1889, to W. D. Reagan for the sum of $2,000; reported his proceedings to the circuit court; and on the 22d day of May, 1890, the purchase money having been paid and the sale confirmed by the court, conveyed the block to Reagan. On the 1st day of August, 1890, W. D. Reagan conveyed the block to Hugh F. Reagan, and on the 30th day of the same month he conveyed the same to Lytton Reagan, a minor.

On the 7th day of August, 1894, Lytton Reagan, by his next friend, Hugh F. Reagan, instituted a suit in the Washington circuit court, against the said Alley Hodges, Sarah Hodges, James C. Hodges, Jr., Robert Hodges, and William T. Hodges, and asked that dower be set apart to Alley Hodges in said block 20. On demurrer the suit was dismissed as to Sarah, W. T. and Robert Hodges. One hundred and sixty-two and a half feet square in the southeast corner of the block was set apart to Alley Hodges as dower; and a decree for the remainder of the block was rendered in favor of Lytton Reagan.

On the 26th day of April, 1899, Lytton Reagan, by his next friend, Hugh F. Reagan, filed three separate motions in the Washington circuit court; one against the said Alley Hodges, James C. Hodges, James Poore, Maggie Poore, Robert Hodges, Sarah Hodges, Thomas G. Tally, Maggie Tally, and others; one against the said Alley Hodges, James C. Hodges, James Poore, Maggie Poore, William T. Hodges, Sarah Hodges, and others; and the other against the said Alley Hodges, James C. Hodges, James Poore, Maggie Poore, and others. The relief asked for in each motion was a writ of possession for so much of block 20 as was not set apart to the widow as dower. The defendants filed responses. By consent of parties and order of the court all the motions were consolidated and made one.

In April, 1899, Lytton Reagan, by his next friend, Hugh F. Reagan, brought three actions of ejectment in the Washington circuit court; one against the said William T. Hodges and Emma Hodges, his wife, in which he asked for the possession of one-fourth of said block in a square in the southwest corner thereof; one against the said James Poore and Maggie Poore, his wife, in which he asked for the possession of a small frame building in the northwest corner of said block; and the other against the said Robert Hodges and Elle Hodges, his wife, Thomas G. Tally, and Maggie Tally, his wife, in which he asked for the possession of a small

frame building in the northeast corner of the same block. These three actions were consolidated. The defendants answered, and, among other things, pleaded seven years' adverse possession in bar of the action.

The motion and the action of ejectment were heard upon the same evidence, the motion by the court and the action by a jury. In both cases the defendants recovered judgment. The issues in the action were first tried. The court followed the verdict of the jury. Plaintiff appealed in both cases.

The appellees had and have no title to the land in controversy, unless they acquired it by adverse possession. All that any of them ever had was acquired by inheritance from James C. Hodges, deceased, and that was swept away by the decree of foreclosure.

After appellant had proved the facts we have stated, and that he had acquired the legal title to the land in controversy, the said James Poore, one of the appellees, for the purpose of proving that they acquired title to the same by adverse possession, was allowed by the court to testify, over the objection of the appellant, that he had, before the decree of the foreclosure of the mortgage, built a house on the land in controversy and occupied it and a part of the land adversely. This testimony was incompetent, and should have been excluded. The decree of foreclosure divested the appellees of every right they had to the land at that time. They cannot go behind it to set up a title. *Roth* v. *Merchants' & Planters' Bank, ante,* p. 200. The testimony was prejudicial because it was calculated to lead the jury to believe that they could do so, and it is probable that it had that effect.

The same witness was allowed to testify, over the objections of the appellant, that his wife, one of the heirs of James C. Hodges, deceased, and one of the appellees, told him to build a house on the land, and that they had as good right to it as anybody, and that he acted under the advice of Parson Wainwright, a lawyer, in making improvements. This testimony was, of course, incompetent.

Appellant says that no holding of block 20 by the heirs of James C. Hodges, deceased, before the assignment of dower therein to his widow, was adverse to him (appellant). The truth of this statement depends upon circumstances. Her right to dower alone did not give her the right to possession and make any holding before it was set apart adverse only to her. The only land of her husband's estate which she was entitled to hold before her dower

was set apart was the mansion or chief dwelling house of her late husband, together with the farm thereto attached. "By the common law, the widow had the right to tarry in the mansion for forty days after the death of her husband, which is called her quarantine, but after the expiration of that time the heir could put her out of possession, and drive her to her suit for dower." *Carnall* v. *Wilson,* 21 Ark. 62, 65. But under the statutes of this state she is entitled to the possession of the mansion or chief dwelling house of her late husband and the farm attached until her dower is assigned. It may be that the widow in this case was entitled to hold the whole of the block on which the mansion was situated until dower was assigned to her, because the improvements thereon, such as outhouses, gardens, fields, horse lots and pastures, and perhaps other things, made it useful or necessary to the enjoyment of the mansion, and that no possession could have set the statute of limitation in motion against the appellant until after her dower was assigned. To allow her this right would be promotive of the object of the statute, which was to afford her shelter and support until her dower was assigned. But this question is not before us for decision.

For the prejudicial error indicated, the judgments in both cases are reversed, and the causes are remanded for new trials.