CARTER v. CARTER.

4-4570

Opinion delivered March 29, 1937.

*Jonas F. Dyson* and *Roy D. Campbell,* for appellant.
*W. J. Dungan* and *Ross Mathis,* for appellee.

McHANEY, J.   Appellant and his intestate, a brother,
R. J. Carter, prior to the latter's death on January 7,
1918, were partners in business, each owning a one-half
interest in the Carter Lumber Company, a partnership
doing business in that name.   The assets of the firm con-
sisted of two shingle mills, a lot of timber, a home in
Cotton Plant, occupied by the partners, their mother,
Mrs. J. D. Carter, until her death on April 19, 1931, and
the daughter of appellant, and also certain accounts re-
ceivable.   Also the firm owed certain debts.   R. J. Carter
was unmarried, and at his death his mother, a widow, be-
came his sole heir.   In addition to his other assets, above
stated, he had a policy of life insurance made payable to
his estate in the sum of $5,000, which, less the indebted-
ness, amounted to $4,035.19 net collected.   As above
stated, the mother, Mrs. J. D. Carter, died on April 19,
1931, and she left surviving her appellant and three other
sons, R. C., Joe, and Elmo Carter, the appellee, and an-
other heir by a deceased daughter.   Shortly after his
brother's death in 1918, appellant was appointed ad-
ministrator of his estate.   For more than thirteen years
after his appointment as such, he made no report and
settlement of his account as administrator and not until
after the death of his mother did he do so, to-wit:  On
July 10, 1931.   At that time he filed a report and settle-
ment showing that he had sold the assets of the Carter
Lumber Company, including two shingle mills and a lot
of timber for $74,500 and had collected accounts receiv-
able in the sum of $2,697.78, making a total of $77,197.78,
and that he had paid out for debts of the firm the sum
of $29,899.50, leaving a balance of $47,298.28 to be divided
equally between him and his mother, Mrs. J. D. Carter.
His disbursement items listed in this account shows a
distribution of this entire balance and an indebtedness
due him for over expenditures in the sum of $289.15.   No
vouchers were filed evidencing these expenditures.

   Thereafter, on November 15, 1932, exceptions were
filed to the report and settlement of appellant by R. C.
Carter and Elmo Carter, brothers of appellant, challeng-

ing the entire account and each item thereof, and praying the appointment of an auditor to state the account. For instance, exceptions were taken to the statement that the assets of the Carter Lumber Company were sold for $74,500, including timber, whereas the sale price was for the mills and certain timber $70,000, of which $10,000 was paid in cash and the remainder at $10,000 per year for six years at 5 per cent. per annum until paid, and additional timber sold to Southwestern Veneer Company for $4,000 in addition to accounts receivable reported, without any account for interest collected. Exceptions were also taken to the charge against his mother of one-half the home account, amounting to $39,519.98, it being alleged that she was a very old woman, and that her expenses could not have amounted to one-half of said sum. On January 23, 1933, appellant filed a second or supplemental final report and settlement, varying somewhat from the first, and exceptions were filed to it, and on March 17, 1933, both reports and exceptions were presented to the probate court, and by consent W. M. Sales was appointed auditor to examine and restate the account of appellant as administrator and to report his actions to the court. Thereafter, the auditor made a report to the court showing that appellant was indebted to the estate of his mother in the sum of $24,643.61. Exceptions were filed by both parties to the report, but on a hearing the court entered judgment against him for said amount. An appeal was prosecuted to the circuit court, where, after trial *de novo,* judgment was entered against appellant in the sum of $22,067.39, Elmo Carter, in the meantime having been appointed administrator of his mother's estate, and made a party to the action. An appeal has been taken from this judgment.

For a reversal of the judgment against him appellant first insists that Elmo Carter and R. C. Carter had no interest in the estate of their brother, R. J. Carter, deceased, and for that reason, had no right to file exceptions to the settlement of the R. J. Carter estate, and that the additional fact that Elmo Carter was appointed administrator of his mother's estate on May 11, 1934, is an admission that he had no interest in the estate of

R. J. Carter, and, therefore, had no right to file exceptions to a settlement therein. We think appellant is in error in this contention. While it is true that the brothers of R. J. Carter, deceased, had no interest in his estate as his heirs, it is also true that they were interested in the estate of their mother who had succeeded to the whole estate of her deceased son, as her heirs, and even during her lifetime they had an expectant or prospective interest in her estate, and certainly after her death they succeeded to all her rights in her deceased son's estate as her heirs, and if the administrator of the deceased son's estate, appellant, had failed to properly account to her for such estate, they might, as her heirs, maintain an action against him, or her administrator might do so. Under § 189, Crawford & Moses' Digest, it is provided that heirs, legatees and creditors may file exceptions to an administrator's account, and while that language may, by a literal construction, refer to heirs, legatees and creditors of the deceased person whose estate is being administered, it would seem that an heir of an heir would necessarily have the same right.

A similar contention is made that Elmo Carter, as administrator of his mother's estate, had no right to pursue appellant on appeal to the circuit court, but we think the administrator would have the right to prosecute the suit for the benefit of all the heirs of Mrs. J. D. Carter's estate. Nor do we think the circuit court erred in refusing to revoke the letters granted to Elmo Carter.

Appellant insists that even though it be true that he had not accounted to his mother for all funds coming to her from the estate of R. J. Carter, deceased, and that even though he had filed a false and fictitious statement of the payment of these funds to her, that the remedy of the other sons would have been an action in chancery court to cause a proper accounting of the same in such court. We cannot agree. The administration was pending in the probate court. An account had been filed, and it was the duty of the probate court to examine and inquire into such account even though no exceptions had been filed, and to require appellant to account properly for all the funds coming into his hands, as ad-

ministrator. *Stricklin* v. *Galloway*, 99 Ark. 56, 137 S. W. 804.

The real question in the case is whether the account of appellant as administrator of his brother's estate, as shown by the judgment of the circuit court, is supported by substantial evidence. We have carefully read the evidence as abstracted by the parties, and have reached the conclusion that the court's findings and judgment are supported by substantial evidence, and that a larger judgment, in fact, might have been sustained. We think the court was very liberal with appellant, for, beginning with the sale of the assets of the Carter Lumber Company, a short time after the death of R. J. Carter in 1918, the court gave appellant credit for the full amount of his mother's personal account and one-half the home account, as claimed by him. The court also credited appellant with $2,500, being one-half of the $5,000 advanced to J. D. Carter with which to go into business, whereas it might properly have refused such credit and charged the whole amount advanced to J. D. Carter, to appellant. It, also, appears from the court's account that appellant was charged with interest on the balance due his mother from the date of her death only, whereas during all of the thirteen years appellant had been handling the funds, he had been collecting interest on the Elsberry & Carnahan notes given for the purchase price of $60,000 of the assets of 5 per cent. per annum, and on large sums on time deposit at 4 per cent. per annum, which sums were funds realized from the assets of the partnership. We think the court might well have charged appellant with one-half the interest he collected during this period of time because one-half of the funds he held in his hands belonged to his mother's estate.

We do not undertake to set out this account in full as it could serve no useful purpose as a precedent in the future. Suffice it to say that we have carefully considered all the evidence bearing upon the questions at issue, and find substantial evidence to support the judgment of the circuit court, and it is, therefore, affirmed.