RONALD PRICE v. EDITH M. PRICE, ADMINISTRATRIX

5-6169                                      491 S.W. 2d 793

Opinion delivered March 5, 1973
[Rehearing denied April 16, 1973.]

*Mike Wilson,* for appellant

*Stubblefield & Matthews,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal is from an order of a probate court closing administration on the estate of Carrol W. Price and discharging the appellee as administratrix. This order contained the following specific findings that are material here: that the only asset of the estate was a 3.62-acre tract of real estate; that the same had been occupied by the decedent and his widow, the administratrix, as their homestead; that the widow and minor children of the decedent were residing upon the property; that the title to the real property is vested in the five children of the decedent, effective upon the closing of the estate, subject to the dower rights of the widow and the homestead rights of the widow and minor children; that the heirs of the decedent have waived all rights they might have and the pending petition for an accounting by the administratrix should be stricken; that in the event that the appel-

lant, decedent's eldest child, continues to press his objections, the administratrix is entitled to a lien, in addition to the lien of a judgment entered by the court on the same date, for $6,000 for expenses and compensation as administratrix, but that the court did not rule upon this claim; that no further accounting by the administratrix was necessary or required. The court also approved the "first and final report" filed by the administratrix, but reduced the amount of credit to which she was entitled for payment of claims from $2,049.91 to $1,127.16. On the same date the court had entered an order reviving a judgment and lien granted appellee by the court on June 12, 1962. That judgment was for claims against the estate allegedly paid by Mrs. Price in the sum of $2,049.91, for which a lien was granted against the real property of the estate. The order of revivor was entered upon appellee's petition filed April 19, 1972, but the judgment was reduced to $1,127.16, the amount of the claims against the estate actually paid by appellee from her own funds.

The first point urged by appellant, who filed a response to the petition to revive the judgment, is that the probate court had no power either to grant a lien upon the decedent's real estate or to revive a judgment allowing the claims. We find no reversible error on this point. The probate code specifically gives an order allowing claims against an estate the effect of a judgment. Ark. Stat. Ann. § 62-2605a (Repl. 1971). It also gives the probate court the same powers to carry out its judgments as exist in courts of general jurisdiction. Ark. Stat. Ann. § 62-2004b (Repl. 1971). Procedure in the probate court is the same as in courts of equity, except as otherwise provided in the code. Ark. Stat. Ann. § 62-2004e (Repl. 1971). We do not construe either the order granting a lien upon the real estate or that reviving the lien to do more than recognize the fact that the judgment, like a judgment of a circuit or chancery court, constitutes a lien on real estate of the owner. Ark. Stat. Ann. § 29-130 (Repl. 1962).

Appellant's argument that the probate court had no jurisdiction to revive a judgment is based upon *Rose* v.

*Thompson,* 36 Ark. 254. At the time of that decision the allowance of claims did not have the effect of a judgment and no jurisdiction to revive a judgment had been conferred upon the probate court. The provisions of Ark. Stat. Ann. § 62-2605a, as it reads after amendment by Act 287 of 1967, have altered the situation existing when *Rose* was decided and expressly confer the jurisdiction of the court to revive its judgments allowing claims. The amendment was specifically directed toward eliminating the effect of the holding of *Rose* and of *Brown* v. *Hanauer,* 48 Ark. 277, 3 S.W. 27, in that respect.

We do find merit in appellant's remaining contentions. He asserts that the court erred in closing the estate without requiring an inventory to be filed and without requiring annual accountings.

Carrol W. Price died intestate on December 4, 1960, leaving surviving him: his widow, Edith M. Price; three children by a previous marriage, Ronald, aged 23, Patsy, aged 20, Sandra, aged 15; and two minor children, Joey Lynn, aged 5, and David Wayne, aged 8 months, both of whom were then living and have continuously lived with their mother, Edith M. Price, in a dwelling house situated on a 3.62-acre tract, which was the only real estate owned by the decedent. On November 14, 1961, the widow filed a petition seeking appointment as administratrix, stating that the value of the real estate was undetermined and that the estimated value of the personal property was $500. Claims totalling $2,-049.91 were filed. On June 12, 1962, without any previous notice, except for publication of notice of the appointment of the administratrix as required by Ark. Stat. Ann. § 62-2111 (Repl. 1971), an order allowing the claims was entered. It contained findings that these claims had been paid by the widow and that there were no funds, property or assets of the estate available for their payment except for the 3.62-acre tract of land. In that order the court declared a lien upon the real estate in favor of Ethel M. Price and provided that the amount of the claims paid by her be recovered, in addition to her dower and homestead, from any sale of the real property.

The administratrix filed a "first and final report" on June 18, 1962. This was not in the usual form prescribed by this court for an accounting pursuant to Ark. Stat. Ann. § 62-2007 (Repl. 1971), but was rather in the form of a petition in which she asked approval of her report and distribution, and sought her discharge. In that report, she alleged that her decedent owned no personal property except for furniture, furnishings, appliances, implements and equipment reasonably necessary for family use and occupancy of the widow's dwelling on the real estate, that this personal property had an estimated value of $500 and that she had delivered the same to herself, and asserted that title had vested in her as widow's allowances. She also alleged that she had paid the claims against the estate, amounting to $2,049.91, from her own personal funds and was entitled to reimbursement. Mrs. Price further alleged that the only other property was a tract of land containing approximately 3.62 acres, occupied by the petitioner and her decedent as their homestead, which was subject to her lien thereon for the claims paid by her and to her dower and homestead rights and the homestead rights of the minor children. The administratrix claimed that these actions constituted a final distribution and a full administration and stated that she, with the approval of the children of the decedent over the age of 14 years, was to look after and pay the taxes on the real property without any liability for any rent thereon until a sale could be effected at a price which would represent a fair market value thereof.

The court fixed August 21, 1962, as the date for hearing on this report. The only two heirs who were then adults filed objections to this report. They alleged that the administratrix had not accounted for an automobile and for furniture and appliances sufficient to furnish two apartments in addition to the dwelling house. They also registered an objection to the amount the administratrix claimed to have paid to satisfy debts of the estate and alleged that a trailer park with accommodations for 25 house trailers and two apartments were located on the real estate which was very valuable and situated in the industrial zone of Jacksonville, ap-

proximately one block from the new interstate highway system. They also alleged that this property had been operated by the administratrix since the death of their father, without any accounting by her for the rents and profits from this business. They pointed out that the administratrix had filed no inventory as required by law and prayed that the administratrix be required to account for all personal property, the income and profit for the trailer park and apartment rentals and to show the actual amount of money paid from her funds to satisfy the claims against the estate.

At this hearing, it was conceded by the administratrix that she had not used her own funds for payment of claims to the extent she had claimed. She testified that she and her husband had lived on the real estate, on which there was a trailer park, consisting of 25 trailer spaces, which she said she had been operating without profit, and two apartments on which the rent was $50 per month. She said that she wanted to collect her fee as administratrix and all statutory allowances. She also said that her homestead and dower rights had not been assigned to her. Mrs. Price stated that she had made improvements on the property which were paid for from the profits therefrom and her Social Security payments. She admitted that the property was in the city limits, only two blocks from the interstate highway on the access road. Her excuse for not accounting for the income was that the business was her own and that she was paying the taxes. She excused her failure to list the automobile because only two payments had been made on it and she had caused it to be transferred to her and was completing the payments on it from her own funds after applying the proceeds of an insurance policy on which she was beneficiary issued in connection with a personal loan to decedent. At the conclusion of the hearing the probate judge made this statement:

I think you ought to get these claims and accounts straight. I think probably she is correct in these figures she gave, but you should have something to support it.

No inventory has ever been filed, no other accounting has been made, no order has been entered on the objections of appellant and his sister, no petition for widow's allowances has been filed, unless her "first and final report" can be so considered, and no order assigning the items of personal property she claimed has ever been made or entered. No claim of homestead has been made under Ark. Stat. Ann. § 62-601 (Repl. 1971). No appraisal of the real estate was made, either pursuant to Ark. Stat. Ann. § 62-603 (Repl. 1971) or Ark. Stat. Ann. § 62-2301(a) (Repl. 1971) and no sale of the real estate was attempted. As far as the record discloses, nothing whatever was done until appellant filed a petition for accounting and final distribution on January 10, 1972, and asking a sale of the real estate taking into account the widow's dower and homestead rights.

In her petition to revive the judgment of June 12, 1962, appellee alleged that along with the notice of hearing on her "first and final report" she had sent a separate writing containing this statement:

I am trying to find a purchaser for the real property at a price which will represent a fair value and shall keep all of you informed of any offer which I receive, and I shall look after the same and pay the taxes thereon (but no rent) until the property can be sold at a satisfactory price, * * *.

Appellee also alleged that because of the objection by appellant and his sister, the estate had remained open, and she had been required to pay bond premiums, attorney's fees, court costs and taxes from her own funds. She pleaded that the arrangement she had proposed had been agreed to by her stepchildren because their objections did not mention it, that she had a right to occupy, use and receive rents from the real property until her dower is assigned, and that her stepchildren were estopped to claim to the contrary and had waived all their rights. She also claimed a lien on the real estate for $6,-000 for taxes, insurance premiums, bond premiums, administratrix fees, widow's allowances, attorney's fees and costs.

In appellant's response to this petition, he again pointed out that no inventory had ever been filed, and no accountings made. He alleged that the administratrix had managed the property as if it were her own, denied any agreement as alleged by her, denied her right to credit for expenses, and asserted that the administratrix was estopped to claim dower and homestead because she had converted the rents and profits of the estate.

A hearing upon the petition of the administratrix and appellant's response was held on June 8, 1972, pursuant to an order of the court stating that the judgment and lien would be revived unless cause be shown why it should not. At that hearing appellant objected to testimony about the management of the trailer park and to any hearing on the accounting or rents and profits until an accounting was filed. The probate judge expressed doubt that the real property was the homestead, in whole or in part, and made this comment:

> We have to bring this litigation to some sort of conclusion. I am going to grant his motion to revive and going to reduce that amount in that order to this amount you all agreed was correct. To that extent, we can dispose of it. You ought to expedite this thing, it seems to me, file some final accounting and state what has happened, your contention of what she is entitled to and let them argue, but let her state what happened, if anything, in this estate in the way of these disbursements, or assets, or anything else since this accounting in 1962.

Thereafter, at the insistence of appellee's attorney, she was permitted to testify to avoid the necessity for her having to return to court. Mrs. Price then related that she and her children, now aged 15 and 12, still reside on the property, that she rents the two apartments and one trailer space for $190 per month, and that they are located on the same one-fourth acre on which the dwelling house is situated. She said that there were 20 trailer spaces for rent on the 3.62-acre tract, each of which is rented for $20 per month, making

a total rental of $590 per month. She supposed that the balance remaining after the payment of water bills of $30 per month went for groceries. She had paid taxes on the property and premiums on insurance policies which she supposed were payable to her. While she claimed $6,000 for service as administratrix, she admitted that she did not know where the figures came from. She admitted that she had all the receipts for the last 10 years and all the books and records, but did not offer to produce any of them.

Immediately after the conclusion of Mrs. Price's testimony, her attorney offered to waive the claim for $6,000 if the estate could be closed on that day. When appellant's attorney insisted that an accounting be first filed, appellee elected to stand upon her contention that she had a right not to account further than she had in 1962. After a colloquy among the probate judge and the respective attorneys, and in spite of the judge's earlier statement, the court arrived at a decision to enter an order closing the estate, from which appellant could appeal on the question whether an additional accounting was necessary. The probate judge expressed reservations about allowance of the $6,000 claimed by appellee.

We agree with the appellant that the filing of an inventory by a personal representative, describing each item of property in detail and setting out his appraisal of the fair market value thereof as of the date of decedent's death is not optional.[1] The statute requiring it uses mandatory language. Ark. Stat. Ann. § 62-2301 (Repl. 1967). It forms the basis for many other procedures in the course of administration. In his first accounting the personal representative is required to charge himself with the property of the estate shown on the inventory. Ark. Stat. Ann. § 62-2804 (Repl. 1971). See *Whitlow* v. *Patterson,* 195 Ark. 173, 112 S.W. 2d 35. We have both before and after enactment of the probate code recognized that the value of personal property as shown by the inventory has a significant bearing

[1]As to administrator's duty to cause personal property to be appraised before the adoption of the probate code, see *Lambert* v. *Tucker,* 83 Ark. 416, 104 S.W. 131.

upon the making of widow's allowances. See *Atkinson v. Van Echaute,* 236 Ark. 423, 366 S.W. 2d 273; *Buhrmester v. Buhrmester,* 163 Ark. 539, 260 S.W. 410. Furthermore, the pleading labeled "first and final report" does not comply with the requirements of Ark. Stat. Ann. §§ 62-2803 (Repl. 1971) and 62-2804 (Repl. 1971). Those sections of the probate code are also couched in mandatory language. The statute requires that accounts cover a period distinctly stated, be accompanied by proper vouchers, and contain charges against the personal representative for property of the decedent according to the inventory, for all income and property received, credits to which the personal representative is entitled for payments other than payments to distributee and for assets delivered to distributees. We do not agree with appellee that her "first and final report" furnished full information with respect to everything pertaining to the estate, at least in the manner and form required by the code.

Appellee asserts that appellant is not entitled to relief because: (1) the only personal property of the estate was household furnishings, the title to which vested in the widow under the provisions of Ark. Stat. Ann. § 62-2501 (Repl. 1971) and (2) the real estate constituted the homestead of the decedent and the "first and final report" discloses that it has been distributed in kind to the widow and five children of the decedent subject to the dower rights of the widow and minor children and the lien of the widow for the amount of the claims paid by her.

The conclusion that there was no personal property other than household furnishings is not wholly justified, in the absence of a properly verified inventory. The widow's own testimony indicates that there may have been an equity in an automobile. Since the decedent had purchased the property, she should have proceeded to pay for it from the assets of the estate or sold it as provided under Ark. Stat. Ann. § 62-2404 (Repl. 1971), obtained authority from the court to abandon it as permitted under Ark. Stat. Ann. § 62-2407 (Repl. 1971) or applied to the court for assignment of it to her as a part of the

statutory allowances to her under § 62-2501. At any rate, she was accountable for it, either by accounting under the probate code or for conversion. See Ark. Stat. Ann. § 62-2408 (Repl. 1971). Without an inventory, the court was in no position to determine whether all of the items claimed fell within the purview of allowances to the widow and minor children in order to make an appropriate assignment to them. The burden of showing the value of property claimed as widow's allowances was on the widow. *Henry* v. *Tillar*, 70 Ark. 246, 67 S. W. 310; *Buhrmester* v. *Buhrmester*, 163 Ark. 539, 260 S.W. 410. The personal representative was entitled to the possession of the intestate's personal property as against the widow and heirs and the widow's rights are to be worked out through the orderly administration of the estate and not by her taking possession of the property only, unless it be shown that the total estate does not exceed the widow's allowances. *Lambert* v. *Tucker*, 83 Ark. 416, 104 S. W. 131. *Jensen* v. *Housley, Admr.*, 207 Ark. 742, 182 S.W. 2d 758.

We have already pointed out appellee's failure to follow statutory requirements for claiming her homestead rights. It was not for her, acting upon her own, to determine the extent of the homestead. That right was limited to real estate having a value not to exceed $2,500 if more than one-fourth of an acre in area or an area not to exceed one acre in any event. Art 9, Sec. 5, Constitution of Arkansas. *Barnhart* v. *Gorman*, 131 Ark. 116, 198 S.W. 880; *First National Bank of Owatonna* v. *Wilson*, 62 Ark. 140, 34 S.W. 544; *Gibbs* v. *Adams*, 76 Ark. 575, 89 S.W. 1008. The only statement in this record relied upon by the widow is her own testimony that the best offer she had received for the property was $2,000. This hardly proves the value of the property, but the homestead right could not possibly have encompassed the whole tract. The burden was on the claimant to establish the value and extent of the homestead. *Barnhart* v. *Gorman*, supra; *Pace* v. *Robbins*, 67 Ark. 232, 54 S.W. 213. She could not unilaterally and summarily select the part claimed as homestead out of the whole tract in arbitrary or capricious disregard of the rights of others. *Sparks* v. *Day*, 61 Ark. 570 33 S.W. 1073.

The excessive and arbitrary designation of the homestead by appellee in her "first and final report" cannot be said to bar appellant from applying to the court for the relief he seeks. If appellant had proceeded in the manner required by statute, the issue as to extent and value of the homestead might long since have been settled.

Appellee contends that she is not accountable for rents collected by her because her dower in the real estate has not been assigned. She relies upon Ark. Stat. Ann. § 62.-2501.2 (Repl. 1971) which permits a widow to remain in possession of the mansion or chief dwelling house of her late husband, together with the *farm* attached thereto until dower is laid off and assigned to her. Although this statute should be liberally interpreted in favor of the widow, by no stretch of the imagination can the property involved here be classified as a farm. We are not aware of any application of this statute that has been, or could be, made to extend its terms to urban property used for commercial purposes or as residential rental property. In *Johnson* v. *Johnson*, 106 Ark. 9, 152 S.W. 1017, it was held that the farm attached to the mansion house only included lands occupied as a farm and not those that have not been used as a farm. The only intimation that the effect of the statute might be extended to an entire urban tract was a conjectural statement on the part of the court in *Reagan* v. *Hodges*, 70 Ark. 563, 69 S.W. 581. There it was said that, even though the widow may have been entitled to hold possession of an entire city block because the improvements, such as outhouses, gardens, fields, horse lots and pasture, made it useful or necessary to the enjoyment of the mansion, the question was not before the court. Even this liberal interpretation would not entitle appellee to retain the rents from trailer spaces which were not within the limits of the homestead. Of course, the widow is entitled to her proportionate part of the rents from that portion of the land which was not a part of the homestead, along with the rents from the homestead itself. Ark. Stat. Ann. § 62-2501.3 (Repl. 1971); *Mayo* v. *Arkansas Valley Trust Co.*, 132 Ark. 64, 200 S.W. 505.

Appellee also argues that appellant's present pleading was not timely filed and that he is estopped to now assert any claim. Appellant promptly objected to the "first and final report" when it was first filed. At the conclusion of the hearing at that time, the probate judge's statement clearly called for some further action on the part of the administratrix. Even though that statement was not incorporated into a formal order, the matter rested there until appellant provoked action by his present petition. It was the duty of appellee, not appellant, to close the estate, and appellant, as an interested person could ask that the personal representative be cited to show cause why the estate could not be closed. Ark. Stat. Ann. § 62-2802 (Repl. 1971). See *Kenyon, Executor* v. *Gregory*, 127 Ark. 525, 192 S.W. 887. See also, Ark. Stat. Ann. § 62-2813 (Repl. 1971). The mere lapse of time did not justify the striking of appellant's pleading.

Appellee's assertion of estoppel is based upon her testimony that she sent a separate writing to appellant and other adult children along with her notice of her "first and final report" that she would look after and pay the taxes on the real property but would not be liable for any rent thereon, until a sale could be effected at a price that would represent a fair market value. This is different from the statement in her report only in that the approval of the children was not asserted, and she stated that she would communicate any offers received. No evidence pertaining to the separate writing appears in the record until the 1972 hearing. Quite obviously, two of the children did not wholly agree to this arrangement, because their objections first filed pointed out that the real property claimed as homestead was a trailer park, was very valuable property and that it was urban property, and that no accounting for income and profits had been made.

The personal representative occupies a fiduciary relationship toward the heirs, and it is his duty to act toward them, as the beneficiaries of the trust administered by him, with the utmost good faith. *Crider* v. *Simmons,* 192 Ark. 1075, 96 S.W. 2d 471; 31 Am. Jur. 2d

28, Executors & Administrators, § 2; 33 C.J.S. 1101, Executors & Administrators, § 142. See also, *Clifton* v. *Guest,* 216 Ark. 352, 226 S.W. 2d 61; *England Loan Co.* v. *Campbell,* 183 Ark. 49, 35 S.W. 2d 75; *Menifee's Admrs.* v. *Ball,* 7 Ark. 520. The duty of the personal representative to account is a continuing one, not subject to a statute of limitations until such time as he is finally discharged and final distribution approved. See Ark. Stat. Ann. §§ 62-2811 (Repl. 1971), 62-2902 (Repl. 1971). As long as an administration is pending, it is the duty of the probate court, even in the absence of exceptions, to inquire into an account filed and to require the personal representative to account for all funds coming into his hands. *Carter* v. *Carter,* 193 Ark. 894, 103 S.W. 2d 938.

Appellant relies upon the case of *Mayo* v. *Arkansas Valley Trust Co.,* 132 Ark. 64, 200 S.W. 505, but we cannot agree that it is authority to apply an estoppel here. In that case the executor, a bank, had taken charge of the real estate of the decedent, even though it was not needed for the payment of debts. It had rented the land and collected the rents for a number of years with the acquiescence of the widow and heirs. The executor after paying the taxes, repair costs, insurance premiums and other expenses pertaining to the real estate had paid an indebtedness secured by a mortgage on part of the real estate. A controversy arose as to whether the rents should be treated as realty or personalty and whether the payments of this debt should redound to the benefit of the widow, insofar as her right to dower in the realty was concerned. It was decided that the widow was entitled to the same share of the rents whether realty or personalty, and that the only fair and equitable method to dispose of this feature of the controversy was to treat the net amount of the rents after payment of the mortgage debt as the proper amount for distribution and to dispose of it in accordance with the statute regulating dower, rather than to have an accounting of the funds and to subrogate the creditors and heirs to the rights of the mortgagee in order to compel the widow to pay her share. There is no argument here about the widow's entitlement to dower or the proportionate amount thereof and no mortgage lien on real estate is involved.

In this case, the administratrix clearly recognized that the heirs had some interest in this real estate, both in her report and the notice she gave. The proceeding was still pending in the probate court and is unlike the situation that might be involved in an equitable proceeding for an accounting, after the administration had been closed. Here, the court, in reducing the allowance to appellee for claims paid by her, properly considered the original objections and exceptions of appellant as continuing as long as the purported account filed had not been approved. *Himes* v. *Sharp,* 123 Ark. 61, 184 S.W. 431. We find no basis for estoppel here based only upon the lapse of time between appellant's objections and exceptions to appellee's "first and final report" and the petition to cite her to render an accounting.

Appellee states that appellant's present attorney has failed to comply with Rules 8 and 9 of the Uniform Rules for Circuit, Chancery and Probate Courts of the State of Arkansas with respect to additional counsel and withdrawal of counsel. Rule 9 would have no application to new counsel. We find no objection by appellee in the trial court to the appearance of appellant's present attorney, rather than the attorney who represented him at the hearing in 1962. We cannot see how appellee has been prejudiced, even if adequate notice was not given to the court and counsel, and appellant was allowed by the court to proceed in the matter.

We need not treat appellee's cross-appeal. She simply requests that the case be remanded so that the exact amount due her as compensation and for expenses of administration may be fixed, and remand is necessary for further proceedings in the matter, in any event.

The order closing the administration is reversed and the cause remanded for further proceedings.

Byrd, J., not participating.