In re Edward P. MOLITOR, Debtor.

Daniel K. SCHIEFFLER, Plaintiff,

v.

PULASKI BANK AND TRUST COMPA-
NY, Trustee of the Josephine S. Molitor
Trust/Edward–Megan Trust and Molly
Molitor Trustee of the Josephine S. Mol-
itor Trust/Molly–Andria Trust, Defen-
dants.

Bankruptcy No. 93–20101M.
Adv. No. 94–2007.

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

March 15, 1995.

Daniel K. Schieffler, Chapter 7 Trustee, West Helena, AR.

Warren Dupwe, Jonesboro, AR, for Daniel K. Schieffler.

James C. Luker, Wynne, AR, for debtor.

Raymond Abramson, Clarendon, AR, for Molly Molitor.

## ORDER

JAMES J. MIXON, Bankruptcy Judge.

On August 9, 1993, Edward P. Molitor (the "Debtor") filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. On August 9, 1993, Daniel K. Schieffler (Schieffler) was appointed as bankruptcy trustee.

On May 20, 1994, Schieffler filed this adversary proceeding against Pulaski Bank and Trust Company (Pulaski Bank), Trustee of the Josephine S. Molitor Trust/Edward–Megan Trust (the Edward–Megan Trust), and Molly Molitor, Trustee of the Josephine S. Molitor Trust/Molly–Andria Trust (the Molly–Andria Trust). The complaint alleged that the above-named trusts have possession of several specific items of property in which the bankruptcy estate holds a one-half interest and sought turnover of the property pursuant to 11 U.S.C. § 542 (1988). The complaint also sought to avoid any transfers of property of the bankruptcy estate under the provisions of 11 U.S.C. § 544(a) and (b) (1988).

The defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed.R.Bankr.P. 7012(b). The motion alleged the existence of another action between the same parties arising out of the same transaction or occurrence pending in the Probate Court of Phillips County, Arkansas. The motion also alleged that the complaint failed to state a cause of action. The motion to dismiss was granted as to the complaint's failure to state a cause of action and Schieffler was allowed twenty days to plead further. At the hearing on the motion to dismiss, the defendants argued that the Court should abstain under 28 U.S.C. § 1334(c)(2) (Supp. V 1993). Although no written motion to abstain was filed, the oral motion to abstain was denied.

On August 23, 1994, Schieffler filed an amended complaint alleging that the defendants, Pulaski Bank and Molly Molitor, as trustees of the named trusts, have possession of property of the bankruptcy estate. The amended complaint seeks to avoid any transfers of property of the bankruptcy estate and seeks an order of turnover of property of the bankruptcy estate. Additional relevant allegations of the complaint will be discussed below.

On September 6, 1994, the defendants filed a motion to dismiss the amended complaint pursuant to Fed.R.Bankr.P. 7012. The motion alleged that the Probate Court of Phillips County, Arkansas, has issued a final order adjudicating the merits of the issues raised in Schieffler's complaint and, therefore, the action is barred under the principles of res judicata and collateral estoppel. The defendants attached to the motion and brief copies of the probate court's orders purporting to resolve the controversy and copies of additional pleadings from the probate court.

On December 5, 1994, a hearing was conducted on the motion to dismiss. The court announced that it would treat the motion to dismiss as a motion for summary judgment under Fed.R.Bankr.P. 7056 and invited the parties to submit such other evidence as permitted by the rules. Fed.R.Bankr.P. 7012(b). On December 27, 1994, the defendant filed a written motion for summary judgment with supporting documents and affidavits and an additional brief. Schieffler has submitted no additional material.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) (1988), and the Court has jurisdiction to enter a final judgment in the case.

## I

### SUMMARY JUDGMENT

Summary judgment should be granted only where it appears that there is

no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Fed. R.Bankr.P. 7056; *Fields v. Gander*, 734 F.2d 1313, 1314 (8th Cir.1984); *Toshiba Am. Inc. v. Video King of Ill., Inc. (In re Video King of Ill., Inc.)*, 100 B.R. 1008, 1012 (Bankr. N.D.Ill.1989). In determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the party opposing the motion for summary judgment and must give that party the benefit of all reasonable inferences drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987); *Fields v. Gander*, 734 F.2d at 1314. To be material, the fact in dispute must affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A party opposing a motion for summary judgment may not rely upon the mere allegations of its pleadings but must instead set forth, by affidavit or otherwise, specific facts showing that a genuine issue exists for trial. Fed.R.Civ.P. 56(e); Fed.R.Bankr.P. 7056; *Chauffeurs, Teamsters & Helpers Local Union 238 v. C.R.S.T., Inc.*, 795 F.2d 1400, 1402–03 (8th Cir.), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986).

## II

## BACKGROUND

The facts necessary to resolve this controversy are not in dispute and are summarized as follows. The Debtor's mother, Josephine S. Molitor (the "Settlor") created the Josephine S. Molitor Revocable Trust (the "Molitor Trust") on July 14, 1992.[1] The Settlor had two children, Molly M. Holt (Molly Molitor) and Edward Price Molitor (the Debtor). Molly Molitor has one daughter, Andria

Beckham, and the Debtor has one daughter, Megan Molitor.

The Molitor Trust provided that during the Settlor's lifetime the Settlor could serve as trustee of the Molitor Trust. The Molitor Trust also provided that as long as the Settlor lived, the income and/or principal of the Molitor Trust could be used as directed by the Settlor or "as may be necessary for [her] health, support or general welfare." The Molitor Trust contained a typical restriction on alienation/spendthrift clause.[2]

The Molitor Trust provided that Molly Molitor shall serve as the trustee of the Molitor Trust if the Settlor elected not to serve as trustee or after the Settlor's death. The Settlor died on March 14, 1993. The Molitor Trust also provided that upon the death of the Settlor, the property of the Molitor Trust would be divided between the Molly–Andria Trust and the Edward–Megan Trust, which were both created by provisions in the Molitor Trust. Molly Molitor was appointed the sole trustee of the Molly–Andria Trust; Molly Molitor and the Debtor were appointed co-trustees of the Edward–Megan Trust. The Molitor Trust provided that in the event Molly Molitor and the Debtor do not agree on what action should be taken in the Edward–Megan trust, the decision of Molly Molitor shall control. Molly Molitor was granted the authority to name a successor trustee to the Molly–Andria Trust and a successor co-trustee to the Edward–Megan Trust.

The Debtor filed for relief under the provisions of Chapter 7 of the United States Bankruptcy Code on August 9, 1993. Question 18 of Schedule B requires the debtor to list "any equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor." Question 19 of Schedule B requires the debtor to list any "contingent and noncontingent interests in estate of decedent, ... or trust." The Debt-

---

1. The word revocable is scratched out of the caption, however, the provisions of paragraph 2.2 of the trust clearly made the trust revocable during Josephine S. Molitor's lifetime.

2. This clause provides that "[t]o the extent permitted by law, no beneficiary of the Edward–Megan Trust shall have the power to dispose of

or to charge by way of anticipation any interest given, and all sums payable to any beneficiary shall be free and clear of his or her debts, contracts, disposition, pledges and anticipations, and shall not be taken or reached by any legal or equitable process in satisfaction thereof." Molitor Trust ¶ 3.4.

or answered "none" to both questions, failing to list both his interest in either the Edward–Megan Trust and his interest in his mother's estate.

Josephine Molitor's will appointed Molly Molitor and the Debtor as co-executors of her probate estate. Molly Molitor and the Debtor resigned as co-executors and Pulaski Bank was appointed as successor administrator. On January 13, 1994, Molly Molitor resigned as co-trustee of the Edward–Megan Trust and appointed Pulaski Bank as successor co-trustee. On January 25, 1994, the Debtor resigned as co-trustee of the Edward–Megan Trust. Thereafter, Pulaski Bank was acting in the dual capacity as successor administrator of Josephine Molitor's probate estate and as trustee of the Edward–Megan Trust.

██ The Debtor and his sister, Molly Molitor, are residual beneficiaries under their mother's will. Therefore, Schieffler, as the Debtor's bankruptcy trustee, is entitled to possession of the Debtor's share of any inheritance from his mother's estate and such property is property of the bankruptcy estate. 11 U.S.C. § 541(a) (1988).

On March 18, 1994, Pulaski Bank, as successor administrator, filed an inventory of Josephine Molitor's estate reflecting no real property and personal property valued at $6,053.78. Schieffler filed an objection to the inventory alleging that Pulaski Bank failed to include certain real and personal property in the inventory that should be included in the probate estate.

On May 6, 1994, a hearing was held on Schieffler's objection to the inventory in the Probate Court of Phillips County, Arkansas, before the Hon. Bentley E. Story, probate judge. At the conclusion of the hearing, the probate judge took the matter under advisement. On May 20, 1994, while the matter was under advisement in the probate court, Schieffler filed this adversary proceeding for turnover of property from the Edward–Megan and Molly–Andria Trusts. On August 12, 1994, the probate judge issued a letter opinion overruling Schieffler's objection to the inventory. On August 23, 1994, Schieffler filed an amended complaint in this adversary proceeding, and on September 1, 1994, an order approving the inventory was filed in the probate court of Phillips County, Arkansas.

Schieffler's amended complaint alleges, in part, as follows:

11. As a consequence of Debtor being beneficiary of one half (½) of the residue of Josephine Molitor's estate, Debtor's estate also has a one half (½) interest in the following property which the Plaintiff may use, sell, or lease under 11 U.S.C. § 363. This property was part of the residue of Josephine Molitor's estate.

A. Josephine S. Molitor had in her possession in a safe deposit box, four (4) United States Treasury Bonds, bearer bonds, at the time of her death. She had three (3) $10,000.00 bonds and one (1) $1,000.00 in her safe deposit box at the time of her death.

B. Josephine S. Molitor had three (3) $5,000.00 Polk County, Arkansas Bearer Bonds in her safe deposit box at the time of her death.

C. Josephine S. Molitor owned a Certificate of Deposit of Commercial Bank and Trust at Paris, Tennessee at the time of her death.

D. A 1990 Cadillac was titled in the name of Josephine S. Molitor at the time of her death, according to the Arkansas Certificate of Title.

E. Josephine S. Molitor owned two (2) irrigation systems at the time of her death. One is located in Section 34, Township 1 South, Range 2 East, Phillips County, Arkansas. The other is located in Northwest Quarter of Section 3, Township 2 South, Range 2, East, Phillips County, Arkansas.

F. The July 14, 1992 Bill of Sale also failed to validly transfer Josephine S. Molitor's interest in a Certificate of Deposit at Commercial Bank and Trust at Paris, Tennessee, and eight hundred (800) shares of Walmart Stock. By virtue of her Last Will and Testament, the Debtor became entitled to an interest in said property upon Josephine S. Molitor's death, and said property became

property of the estate upon the filing of Debtor's Chapter 7 Petition.

G. Josephine S. Molitor owned eight hundred (800) shares of stock in Walmart Stores, Inc. at the time of her death.

H. Defendants have collected the rent and crops from the above described lands during 1993 and 1994, one half (½) of which being property of the estate, and Defendants should be required to account for and turn over the Estate's share of said rents.

12. Josephine S. Molitor also purported to sign a Bill of Sale, dated July 14, 1992, to Josephine S. Molitor, Trustee of the Josephine S. Molitor Revocable Trust. However, said Bill of Sale was ineffective and did not validly transfer her interest in the Bearer Bonds. She never relinquished possession of the Bear [sic] Bonds and kept them in her safe deposit box until her death. The Debtor became entitled to acquire one half (½) interest in said bonds under the residuary clause of Josephine S. Molitor's estate upon her death.

13. The July 14, 1992, Bill of Sale did not describe the 1990 Cadillac and furthermore, the Certificate of Title on the 1990 Cadillac showed it remained the property of Josephine S. Molitor at the time of her death. The Debtor is a one half (½) beneficiary of Josephine S. Molitor's estate and became entitled to his interest in said property upon her death, and said property became property of the Bankruptcy Estate upon filing of the Chapter 7 Petition.

14. The Bill of Sale, dated July 14, 1992, was ineffective and did not validly transfer her interest in the two (2) irrigation systems described above. The Bill of Sale did not mention the irrigation systems. Said irrigation systems remained Josephine S. Molitor's property until her death at which time Debtor became entitled to a one half (½) interest in said property by virtue of Josephine S. Molitor's Will.

15. Plaintiff is asserting the rights of American Express, Animal Hospital, Boatmen's Bank, Terry Corona, Diversified Financial Services, First National Bank of Phillips County, GTE c/o of Anderson Financial Network, Inc., Helena National Bank, Helena Regional Medical Center, Kaiser–Esteck/Vigoro, Kawasaki Sport Center, Marvell Implement Company, Melvin and Hardwick, Memphis Pathology Lab, Motorola, Petroleum Products, Roy Ross Ford, Southern Implement Co., Superior Federal Bank, Terra International, Lannie Travis, Turnover Oil Company, U.S. Department of Agriculture, U.S. Farmers Home Administration, Visa/Simmons First National Bank, and Wholesale Building Supply, creditors with unsecured claims allowable in the Bankruptcy case, which were creditors at the time of the complained of transactions. These creditors' rights are asserted pursuant to 11 U.S.C. § 544(b).

16. By virtue of the Special Warranty Deed, dated July 14, 1992, Defendants claim an interest in the above described lands adverse to Plaintiff, but the claim is without any right whatever, and Defendants have no right or interest in the above-described lands by virtue of said deed. The deed is void as to the above described lands for indefiniteness and uncertainty as to description. Trustee asserts the rights of the aforesaid actual creditors who hold unsecured claims under 11 U.S.C. § 544(b) and also the rights of a bona fide purchaser of real property, other than fixtures, from the Debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists and has perfected such transfer. Said rights are asserted by the Trustee under 11 U.S.C. § 544(a)(3).

Amended Compl. at 4–7.

The defendants argue that res judicata and collateral estoppel apply to Schieffler's complaint because the issues raised by the complaint have already been determined by the probate court. Schieffler argues that the probate judge's order is void because it violated the automatic stay and, therefore, res judicata and collateral estoppel do not apply.

III

## DISCUSSION

The initial questions presented are whether the continuation of the probate proceedings in the Phillips County Probate Court of the probate estate of the Debtor's mother was a violation of the automatic stay and, if so, whether the violation of the automatic stay voids the opinion and order of the probate judge approving an inventory over the objection of the bankruptcy trustee. The answer to both questions is yes.

Section 362(a) provides that filing a petition under Title 11 "operates as a stay, applicable to all entities, of . . . (1) the . . . continuation of a judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the commencement of the case. . . . (3) any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a) (1988).

█ The automatic stay is "mandated by statute and effective upon [the] filing" of the bankruptcy petition without the necessity of the entry of a court order. *In re Tom Powell & Son, Inc.*, 22 B.R. 657, 660 (Bankr. W.D.Mo.1982). The automatic stay is to "ensure orderly administration of the debtor's estate to protect the creditors' right to equality of distribution." *Morgan Guar. Trust Co. v. American Sav. & Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir.1986), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987); *Tantilla v. Stonegate Sec. Servs., Ltd. (In re Stonegate Security Services, Ltd.)*, 56 B.R. 1014, 1019 (N.D.Ill.1986).

█ The property does not have to be in the possession of the debtor for the stay to apply because 11 U.S.C. § 541(a)(1) (1988) defines property of the estate as including all property "wherever located and by whomever held" in which the debtor has a legal or equitable interest. *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1034 (3d Cir.1991); *In re Celotex Corp.*, 128 B.R. 478, 480–81 (Bankr.M.D.Fla.1991). Section 541(a) does not determine the issue of the debtor's prop-

erty interest in a particular asset, this issue is determined by nonbankruptcy law. *California v. Farmers Mkts., Inc. (In re Farmers Mkts., Inc.)*, 792 F.2d 1400, 1402 (9th Cir. 1986).

█ Actions for the turnover of property of the estate inherently concern the issue of whether property is property of the bankruptcy estate and is a core proceeding normally conducted in the bankruptcy court. 28 U.S.C. § 157(b)(2)(E) (1988); 11 U.S.C. § 542 (1988); 4 *Collier on Bankruptcy* ¶ 542.02 (Lawrence P. King, ed., 15th ed. 1994). No attempt can be made by any party to exercise control over property of the bankruptcy estate unless "that party . . . obtain[s] advance relief from the automatic stay from the bankruptcy court." *Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581, 586 (9th Cir.1993).

█ In this case no motion for relief from the automatic stay has been sought even though the Debtor is a party in interest as a residual beneficiary in the probate court proceeding pending in state court. Probate proceedings are by their nature in rem proceedings. Ark.Code Ann. § 28–40–101(b) (Michie 1988). The probate proceeding was pending on the date the bankruptcy petition was filed by the Debtor. Schieffler, by virtue of his appointment as the bankruptcy trustee is the successor in interest to the rights of the Debtor in the probate estate. The probate proceeding, insofar as it concerned the Debtor or any property the Debtor might be entitled to, became subject to the automatic stay the moment the bankruptcy petition was filed, and all actions should have abated in the probate proceeding until relief from the automatic stay was granted.[3] Judge Kishel's statements in the case of *In re Panayotoff*, 140 B.R. 509 (Bankr.D.Minn. 1992) are appropriate here:

The language of this provision is about as clear as one could reasonably want, and about as broad as Congress could have provided. Simply stated, it creates a restraint and injunction against any judicial proceeding against a debtor in bankruptcy.

---

3. The correctness of the determination made by the probate court is irrelevant to the threshold issue of whether there has been a violation of the automatic stay.

*In re Joe DeLisi Fruit Co.*, 11 B.R. 694, 696 (Bankr.D.Minn.1981). This injunction lies unless one of the specific exceptions of 11 U.S.C. § 362(b) is applicable. *In re Blarney, Inc.*, 53 B.R. 162, 164 (Bankr. D.Minn.1985). It is crucial that the language of the two phrases which qualify the term "judicial, administrative, or other action or proceeding against the debtor," is in the disjunctive. This establishes that the scope of this stay is not limited to proceedings for a monetary recovery against the debtor. Further, there is no qualifying language which limits the stay to judicial actions or proceedings brought against an individual in her personal capacity, or to those brought by a creditor against her in her status as the obligor in a debtor-creditor relationship. Section 362(a)(1), then, stays judicial proceedings brought against a debtor solely in the debtor's capacity as personal representative of a probate estate. *In re Fiedler*, 34 B.R. 602, 603 (Bankr.D.Colo.1983). As the court in *Fiedler* noted, 11 U.S.C. § 362(b) does not contain an exception on point. Thus, until the Bankruptcy Court grants relief from stay pursuant to 11 U.S.C. § 362(d), such actions or proceedings are restrained. 34 B.R. at 603–604. *Contra, In re Estate of Nelson*, 243 Mont. 276, 794 P.2d 677 (1990).

*In re Panayotoff*, 140 B.R. at 511–12 (footnotes omitted).

 The Court is mindful that the stay does not apply to actions by the Debtor or trustee in an offensive posture. *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989); *In re United States Abatement Corp.*, 157 B.R. 278, 279 (E.D.La.1993), *aff'd*, 39 F.3d 563 (5th Cir.1994). However, the facts in this case are persuasive that the trustee was

acting defensively to secure property that he alleges is property of the bankruptcy estate by virtue of the Debtor's residual interest in his mother's probate estate. Schieffler's actions were mandated, in part, by the significant conflict of interest of Pulaski Bank.[4] Here, Pulaski Bank was not fulfilling its fiduciary duty to the bankruptcy trustee, who succeeded the Debtor as a potential residual devisee, and Schieffler was required to take defensive action to protect the interest of the bankruptcy estate.

 In this case, the probate court proceeding was stayed by the filing of the Debtor's bankruptcy petition but the probate proceeding continued in violation of the automatic stay. The specific acts that occurred in violation of the automatic stay were the filing of the inventory by Pulaski Bank, the hearing on Schieffler's objection to the inventory, and the entry of the probate court's opinion and subsequent order overruling Schieffler's objection.

 "Actions taken in violation of the automatic stay are void and without effect." 2 *Collier on Bankruptcy* ¶ 362.11 (Lawrence P. King, ed., 15th ed. 1994); *48th St. Steakhouse, Inc. v. I.S.H. Liquidating Corp. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir.1987), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988) (holding that landlord's termination notice violated automatic stay and was void); *Rook v. Rook (In re Rook)*, 102 B.R. 490, 492 (Bankr.E.D.Va. 1989) (holding that order entered by state court regarding property settlement in domestic relations case was entered in violation of the automatic stay and, therefore, void). Since the opinion and order of the probate court were entered in violation of the automatic stay the opinion and order are void and without effect. Therefore, the defendants'

---

4. As trustee of the Edward–Megan Trust, Pulaski Bank owed a fiduciary responsibility to the beneficiaries of the trust to persuade the probate court that the decedent's property had been validly transferred to the Molitor Trust. *Alexander v. Alexander*, 262 Ark. 612, 627, 561 S.W.2d 59, 61 (1978). On the other hand, as successor administrator of the probate estate, Pulaski Bank owed a fiduciary responsibility to the devisees of the decedent's estate to persuade the probate court that the decedent's property was invalidly

transferred to the Molitor Trust and, therefore, was part of the probate estate. *Price v. Price*, 253 Ark. 1124, 1137, 491 S.W.2d 793, 801 (1973). As Justice Fogelman stated in *Price v. Price*, "[t]he personal representative occupies a fiduciary relationship toward the heirs, and it is his duty to act toward them, as the beneficiaries of the trust administered by him, with the utmost good faith." *Price*, 253 Ark. at 1137, 491 S.W.2d at 801.

motion for summary judgment on grounds of res judicata and collateral estoppel is overruled. The motion for summary judgment on other grounds and the motion to dismiss are also overruled. The complaint fairly states a cause of action and genuine disputes as to material facts remain to be determined.

In order to avoid any possible future confusion, the defendants are ordered to forthwith petition the Probate Court of Phillips County, Arkansas, to vacate its order approving the inventory pending a determination of Schieffler's adversary proceeding on the merits and pending other orders of this Court pursuant to 11 U.S.C. § 105(a) (1988).

IT IS SO ORDERED.